[Civ. No. 27657. First Dist., Div. Four. May 5, 1970.]

LYNN A. PERRY, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
JAMES R. GILLEM et al., Real Parties in Interest.

[Crim. No. 8475. First Dist., Div. Four. May 5, 1970.]

In re LYNN A. PERRY on Habeas Corpus.

(Two Cases.)

■■■■■■■■■

**COUNSEL**

Henry C. Fryer and W. Wayne McCombs for Petitioner.

No appearance for Respondent.

Belli, Ashe, Ellison, Choulos & Lieff, Helen B. Culiner and Thomas C. Mehesan for Real Parties in Interest.

**OPINION**

**CHRISTIAN, J.**—Petitioner Lynn A. Perry seeks a writ of habeas corpus to recover custody of her children. She also seeks a writ of prohibition to restrain respondent superior court from determining whether changed circumstances warrant withholding enforcement of a Nevada divorce decree giving her custody of the children.

Mrs. Perry and James Gillem were divorced in Nevada in 1968. Mrs. Perry was awarded custody of the two minor children, James Jr., now 6 years old, and Mark, now 4 years old. Gillem was given reasonable visitation rights and physical custody between June 15th and August 10th of each year. Mrs. Perry and the children lived in Nevada.

On March 19, 1969, the Nevada court made an order defining reasonable visitation rights as one weekend each month, with the children to be returned at 7 p.m. on Sunday. Gillem was ordered not to take the children out of Elko County, Nevada. On September 28, 1969, Gillem arrived in Elko to exercise his visitation rights. In violation of the court's order he took the chidren to California where they are presently living with Gillem and his parents, Luke and Louise Gillem, in Orinda.

On October 7, 1969, the Nevada court issued an order to show cause why Gillem should not be held in contempt, his visitation rights discontinued and the children immediately returned to Mrs. Perry in Nevada. Gillem appeared by counsel and moved the Nevada court to modify the judgment and decree of divorce to give him custody of the children. On November 24, 1969, the Nevada court denied Gillem's motion, held him

■■■■■

in contempt for failure to return the children, suspended his visitation rights until he purged himself of contempt, and ordered the immediate return of the children.

On December 2, 1969, Mrs. Perry filed a petition for writ of habeas corpus in Contra Costa Superior Court to recover custody of the children. In his return to the petition, Gillem alleged that he had removed the children from their mother "[f]or their immediate safety, well-being and in their best interests" after consultation with his attorney. He further alleged that Mrs. Perry was an unfit mother, that she was not using his monthly support payments for their maintenance, that the support payments were frequently usurped by Mrs. Perry's husband who was frequently absent without leave from the armed services, and that Mrs. Perry had been a mental patient and was not mentally and emotionally stable enough to provide a suitable home for the children. Mrs. Perry denied these allegations in a traverse to the return.

On December 12, 1969, a hearing was held in the Contra Costa Superior Court on Mrs. Perry's petition. The court set a date for a hearing to take evidence on any changed circumstances that would warrant a modification of the Nevada decree concerning custody. The court also ordered that the children remain with their father until the hearing with reasonable visitation rights to Mrs. Perry at Gillem's home only. Mrs. Perry immediately commenced the present proceedings before us.

■ It is settled that the courts of more than one state may have concurrent jurisdiction over the custody of a child. (*Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 778 [197 P.2d 739].) The state where the child is actually living has jurisdiction as well as the state where the child is domiciled. (*Id.* at p. 779.) ■ Full faith and credit has only limited application to child custody decrees; it is inherent in the nature of such a decree that it is not final and conclusive, but is subject to modification as circumstances change. (*Marlow* v. *Wene* (1966) 240 Cal.App.2d 670, 675 [49 Cal.Rptr. 881].) ■ Because the courts of this state will reexamine their own decrees on the basis of changed conditions, they will also review custodial orders of other states. (*Allen* v. *Superior Court* (1961) 194 Cal.App.2d 720, 727 [15 Cal.Rptr. 286].)

■ There is no question, then, that respondent court had subject matter and personal jurisdiction to consider an application to modify the Nevada decree. ■ However, whether a court is acting in excess of its jurisdiction is not limited to the question of whether it is acting with jurisdiction over the person or subject matter. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 290 [109 P.2d 942, 132 A.L.R. 715].) "Speaking generally, any acts which exceed the defined power of a court in any

instance, whether the power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition. . . ." (*Id.* at p. 291.)

■ A number of cases have held that the courts will not reexamine custody decrees of a sister state when there has been misconduct or malfeasance on the part of the parent seeking such examination. (*Allen* v. *Superior Court, supra,* 194 Cal.App.2d 720, 727; *Leathers* v. *Leathers* (1958) 162 Cal.App.2d 768, 774 [328 P.2d 853].) "This misconduct generally consists of defiantly leaving a sister state, usually the marital domicile, with the minor to avoid its jurisdiction and for the purpose of seeking redetermination of the issue in a more favorable forum. It appears from an analysis of the California authorities that in most cases in which the courts have refused to reexamine the custody decrees of a sister state the parent seeking reexamination was a fugitive from the state issuing such decree, or abducted the minor from another state to avoid the court's jurisdiction, or brought the child into the forum state in defiance of another state's order [citation], or obtained or retained custody of the child by misrepresentation on occasion of a casual visit and brought him to the forum state." (*Leathers* v. *Leathers, supra,* at p. 774.)

The present case is similar to *Allen* v. *Superior Court, supra,* 194 Cal.App.2d 720, in which a writ of prohibition was granted to prevent the trial court from trying the issue of changed circumstances in a habeas corpus action. In *Allen* the mother, in violation of a Montana decree, brought the children to California. The father petitioned for a writ of habeas corpus, and the mother filed a return challenging the father's fitness and alleging change of conditions. The appellate court, in issuing a writ of prohibition, noted that all the circumstances assigned as changed conditions were in existence in Montana. "To allow her to litigate such conditions in this jurisdiction, would under the circumstances, be tantamount to recognizing a self-determined change of venue in a forum removed from the locale of witnesses." (*Allen* v. *Superior Court, supra,* at p. 729.)

In the present case, real party in interest Gillem violated a court order when he brought the children to California. He is in contempt in Nevada for refusing to return them. The allegations supporting a claim of changed circumstances and Mrs. Perry's fitness were litigated in the Nevada court when Gillem moved to modify the divorce decree to give him custody of the children. The Nevada hearing took place less than one month before commencement of proceedings in California. ■ The "changed circumstances" rule does not permit a party to go from state to state relitigating

issues which have very recently been resolved against him in another jurisdiction.

■ Gillem asserts that the Nevada order specifying that the children were not to be removed from the state, and the order holding him in contempt and requiring immediate return of the children, are invalid. He contends that he had no notice of the proceedings or the orders until the habeas corpus action was initiated in California. But the Nevada court records show that Gillem appeared by counsel at both proceedings, and his own return before respondent court alleged that he took the children away on the advice of the same attorney.

■ Gillem also contends that the prohibition against taking the children out of Nevada is limited to Thanksgiving, Christmas or Easter and thus was not violated. The order reads: "[T]he defendant is not allowed to take them out of Elko County. Easter, Thanksgiving and Christmas are not allowed in the agreement." The interpretation of the order was resolved by the Nevada court when it found Gillem in contempt for violating the order.

■ Petitioner seeks an allowance of attorneys' fees. Although the petitions to the trial court and this court were filed prior to January 1, 1970, they were not determined until after that date; therefore, the new Family Law Act is applicable. (Stats. 1969, ch. 1608, § 37, as amended by Stats. 1969, ch. 1609, § 29.) Civil Code section 4525, subdivision (a), part of the Family Law Act, provides in pertinent part: "During the pendency of any proceeding under this part, the court may order the husband or wife . . . to pay . . . the cost of maintaining or defending the proceeding and for attorneys' fees; . . . Attorneys' fees and costs within the provisions of this subdivision may be awarded for legal services rendered or costs incurred prior, as well as subsequent, to the commencement of the proceeding." Section 4525 is based on former section 137.3. Section 137.3 allowed awards of fees and costs in child custody proceedings. (*Straub* v. *Straub* (1963) 213 Cal.App.2d 792, 799 [29 Cal.Rptr. 183].) Section 4525 does not, as did section 137.3, enumerate the types of proceedings in which attorneys' fees may be awarded, but instead authorizes an award "in any proceeding under this part." One such proceeding is where the issue of the custody of a minor child is raised and the court may make an order for the custody of the child. (Civ. Code, § 4600.) Real party raised the question of custody in the habeas corpus action, thus bringing the proceeding within the terms of section 4600.

Under former section 137.3, attorneys' fees could be awarded in a petition for an extraordinary writ. (*Lerner* v. *Superior Court* (1952) 38 Cal.2d

676 [242 P.2d 321]; *Parker* v. *Parker* (1937) 22 Cal.App.2d 139 [70 P.2d 1003].) *Lerner* was similar to the present case in that the wife sought a writ of prohibition from an appellate court to restrain a trial court from modifying a custody order, contending that the court lacked jurisdiction. The Supreme Court, in holding that the wife was entitled to attorneys' fees incurred in seeking the writ, stated: "On principle, there is no difference between actions in which a woman is compelled by her former husband to resist by an appeal a proceeding brought by him to modify a custody or alimony award and actions in which she is compelled to seek prohibition to prevent improper modification of such awards. In either case she may be unable to retain counsel to represent her, and the policy underlying section 137.3 [is] controlling." (38 Cal.2d at pp. 685-686.) Nothing in the Family Law Act shows an intention to change the rule recognized in *Lerner*.

Petitioner requested fees for the first time in her petitions to this court for habeas corpus and prohibition. Cases prior to 1953, interpreting section 137.3 and its predecessor, section 137, held that attorneys' fees could be awarded only for services to be rendered from the date of application and not for past services. (See *Lerner* v. *Superior Court, supra,* 38 Cal.2d 676, 685; *Warner* v. *Warner* (1950) 34 Cal.2d 838, 840 [215 P.2d 20].) However, section 137.3 was amended in 1953 to provide specifically that attorneys' fees could be awarded for services incurred prior as well as subsequent to any application, including services rendered prior to the filing of the complaint. (Stats. 1953 ch. 620, § 1; see *Middlecoff* v. *Middlecoff* (1958) 160 Cal.App.2d 22, 27 [324 P.2d 669].) Present section 4525 includes a similar clause providing for attorneys' fees rendered prior as well as subsequent to "the commencement of the proceeding." Therefore, it would be proper to award petitioner fees incurred both in prosecuting her petitions before this court and in the proceeding before the superior court.

 The final question is whether this court should award attorneys' fees or refer the issue to the trial court for determination. Attorneys' fees in a domestic relations action are not awarded as a "reward" to the winning party; rather the purpose of the statute is to provide a party with an amount needed to properly litigate the controversy. (*Bernheimer* v. *Bernheimer* (1951) 103 Cal.App.2d 643, 648 [230 P.2d 17].) Awarding of fees is proper only upon a finding of necessity; therefore, the court making the award must consider the respective incomes and needs of husband and wife. (*Straub* v. *Straub, supra,* 213 Cal.App.2d 792, 801-802; *Brown* v. *Brown* (1958) 162 Cal.App.2d 314, 319 [328 P.2d 4]; *Spreckels* v. *Spreckels* (1952) 111 Cal.App.2d 529, 533 [244 P.2d 917].) This court does not presently have before it the facts necessary to determine petitioner's need for attorneys' fees.

Because this is an original proceeding, this court has jurisdiction to entertain an application for attorneys' fees as incident to its original jurisdiction. But in *Lerner* v. *Superior Court, supra,* 38 Cal.2d 676, 687, the Supreme Court decided that while it had jurisdiction to make an award, it would not do so as the trial court was in a better position to consider questions of fact. Here, on the same principle, it is appropriate to direct the superior court to determine petitioner's application and award both costs and attorneys' fees consistent with the views we have expressed.

A writ in the nature of mandate and prohibition will issue directing respondent to vacate its order that the children are not to be removed from the home of James Gillem, and restraining further proceedings in the matter of the application of Lynn A. Perry for writ of habeas corpus, No. 12935. Costs and attorneys' fees (covering proceedings both in this court and in respondent court) are awarded to petitioner against real party in interest James Gillem, in amounts to be fixed by the superior court.

The petition for habeas corpus is granted and real parties in interest are directed to surrender custody of the children to petitioner.

Devine, P. J., and Rattigan, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied July 1, 1970.